UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.                                    Case No. 21-CR-541 (PLF)

FI DUONG,

Defendant.

### FI DOUNG'S MEMORANDUM IN AID OF SENTENCING

Mr. Fi Duong, an honorably discharged United States Marine Corp veteran, stands before the Court having pled guilty to one count of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). *See* 4/1/23 Information [ECF Doc. No. 45] at 1. For the reasons set forth below, Mr. Duong joins in respectfully requesting that the Court sentence him in accordance with the recommendation of the Depart of Probation-- to the three years of probation. *See* Dept. of Probation Sentencing Recommendation [ECF Doc. No. 58] at 2 ("It is recommended that a sentence of 36 months (3 years) probation be imposed in this case. The Probation Office's recommendation is an objective one – and unlike the advocacy based positions of the government and defense counsel. As an arm of the Court, the Department of Probation objectively considers and weighs the sentencing factors set forth in 18 USC § 3553(a).").

Mr. Duong agreed to Probation's recommended special conditions, which includes mental health treatment, 50 hours of community service, and $2,000 in restitution.[1]

---

[1] Probation's recommendation provides, in pertinent part, as follows:

Mental Health Treatment - You must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).

Mental Health Medication - You must take all mental health medications that are

Fi Duong is an honorably discharged Marine Corp veteran with no history of criminality or of committing violent acts. He came to Washington, D.C. on January 6, 2021 at the invitation of President Trump, who told not just his followers but even those that were undecided in their commitment to him and his party, that the election results were incorrect, that this created a national security threat, and that his supporters should go to the Capitol to "fight like hell" on his behalf. The rhetoric used by President Trump and those around him had the desired effect, and Mr. Duong and hundreds of thousands of other Americans were convinced to travel to Washington D.C. to support then President Trump. The job entrusted to this honorable Court, however, is not to punish Mr. Duong for the acts of others, but to consider what he did – *and did not do* – that day. With that focus, and for the reasons stated below, the Court should sentence Mr. Duong to the time already served under house arrest, followed by three years of probation with special conditions. Such a sentence best accords with the parsimony principle that guides federal sentencing and is a proper and sufficient sentence for Mr. Duong.

## **BACKGROUND**

### **Fi Duong and his family**

Mr. Fi Duong is a 30-years old, a United States citizen, and a veteran. *See* Presentence

---

prescribed by your treating physician.

Community Service - You must complete 50 hours of community service within 6 months. The probation officer will supervise the participation in the program by approving the program. You must provide written verification of completed hours to the probation officer.

You are ordered to make restitution to the Architect of the Capitol in the amount of $2,000. The court determined you do not have the ability to pay interest and therefore waives any interest or penalties that may accrue on the balance.

Dept. of Probation Sentencing Recommendation [ECF Doc. No. 58] at 3. The special recommendations also provide for a restitution payment schedule and the disclosure of financial information as and when requested by Probation. *Id.* at 4.

Investigation Report ("PSR") ¶¶ 53, 57, 66-67. He is the oldest of three children. His father, Kiel

Nguyen, is a home health care aid, and his mother, Mai Duong, is an aesthetician who owns ███

Spa and Salon, in the District of Columbia. *Id.* ¶ 53. His sister, Emily, is studying to be an

aesthetician; his brother, An, lives with Fi and works at the ███ Spa. *Id.* ¶ 53.

While his parents both worked, and he was raised in a lower middle-class neighborhood,

Fi's childhood was extremely difficult emotionally, because he had to watch as his father inflicted

a tremendous amount of verbal and physical abuse on his mother. *Id.* ¶ 55. Her culture would not

allow her to stand up to him and she bore the abuse as did her young children.

Fi reacted to his own inability to help his mother by becoming quiet and withdrawn. The

only way for him to be an unhelpful witness to the abuse was by removing himself from the

situation and by concentrating on his hobby of gaming. *Id.* It also led to ███████████

██████████████. In 2016, ████████████████  ████████████

████████████. *Id.* ¶ 62.[2] In addition, once his mother decided to divorce his

father in 2022, Fi understandably ended his relationship with his father, and Fi has not spoken or

seen him in the last two years. *Id.* ¶ 53. He continues to support his mother who has written to the

Court.

In 2018 Mr. Duong married his girlfriend, ███████ and they have one son, ███████████,

age 6. PSR ¶ 56. ████████████ and ████████████████. *Id.* ¶¶ 56, 63. Fi is as involved as

much as he can be in his son's day-to-day life and schooling. While he is unable to do many things

or go to any places with his son, given the terms of his house arrest, Fi gets Dante up in the

---

[2] Bipolar I disorder is a form of mental illness commonly known as manic-depressive disorder or
manic depression. The illness often involves a pattern of cycling between mania – a period of
abnormally elevated or irritable mood and high energy, accompanied by abnormal behavior that
disrupts life – and depression. In between those episodes of mania and depression, people with the
disorder can live normal lives. *See* https://www.webmd.com/bipolar-disorder/bipolar-1-disorder.

morning, gets him ready for school, and takes him to and from the school bus stop each day. Fi is also in charge of helping Dante with his homework, and he does that every single day. *Id.* ¶¶ 14, 56. He is the primary care taker for his young son.

Mr. Duong is more than his offense conduct. His terrible error in judgment on January 6, 2021, which he profoundly regrets, should not detract from this Court's evaluation of him. Fi is a good husband, father, son and brother. Attached hereto as **Exhibit A** is a letter from his mother, Mai Duong, telling the Court about these aspects of her son, including his efforts as a father:



> Perhaps one of the most remarkable aspects of Fi's character is his role as a father. Fi is the proud father of a 6-year-old boy, ███████ ███████████ ], who was born on September 19, 2018, and is on the autism spectrum. Despite the challenges that come with raising a child ██████████, Fi has always been a dedicated and loving father. He spends his days caring for ████████—bathing him, feeding him, playing with him, and providing him with the emotional and physical support he needs. ████████ attends the ███████████████ at █████████████████████, and Fi has been deeply involved in his son's therapy and care. The love and patience he shows his child speak volumes about the man Fi is—a man who deeply values family, responsibility, and compassion.

Mai Duong Letter to the Court (Ex. A) at 1.

Attached as **Exhibit B** is a letter of support from Ed Jarin, who has known Fi for over a decade. They went to basic training together, and they have been good friends ever since. Mr. Jarin informs that he has seen Fi "doing the best he can to take care of his family" and that "he could never imagine hurting anyone. He is a good guy and will help anyone in need if he can." Ed Jarin Letter to Court (Ex. B) at 1.

**Mr. Duong's military service and employment history**

After graduating high school in 2012, Fi joined the United States Marine Corp and served in North Carolina, where he trained and worked as a truck driver. PSR ¶¶ 57, 66-67. He rose to the rank of E-4, received commendations for Good Conduct and Wartime Service, and was honorably

discharged in 2016. *Id.* ¶ 67. Since then, he obtained a commercial driver's license and has been regularly employed and supporting himself and his family in various jobs, including food service and delivery driver, security guard, safety access officer, and at a vinyl pressing manufacturer. *Id.* ¶¶ 70-77. Since February 2023, he has been working at Autobahn Indoor Speedway in Manassas, Virginia, where he is works as an events captain, pit crew, and axe throwing coach. *Id.* ¶ 69. Autobahn Indoor Speedway has informed Probation that Mr. Duong "is an exemplary employee who reports on-time and goes above and beyond." *Id.*

**Mr. Duong's** █████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ *Id.*

**The civil disorder offense at issue**[3]

On January 6, 2001, Mr. Duong arrived in Washington D.C. to exercise his right to protest and attend a Trump rally. He took public transportation to the rally and came alone, with no friends or group. While he wore black clothing and a fanciful Japanese-style mask, he came without weapons or armor, and without any plans to participate in harming anyone, and in fact harmed or

---

[3] The description of the offense is taken from ¶¶ 23-30 of the PSR. As the government concedes in its sentencing memo (page 5 n.5), Mr. Duong did not enter the Rotunda of the Capitol building. Instead, he stayed on the same floor and walked straight through the building from entrance to exit. He was in the building for approximately seven minutes – from 2:56 p.m. to 3:03 p.m.

threatened no one. In this respect, it is instructive that he took video for most of the day, including his own entry into the Capitol building, a decision that showed both his peaceful intent and that he in fact did not participate in any violence, threats, or threatening behavior (nor is he accused of doing so).

At approximately 2:56 p.m., Mr. Duong entered the Capitol building through an open Senate Wing door. He stayed in that entrance area for approximately three minutes talking with others nearby. He then walked through the Hall of Columns South Door and proceeded south before exiting the building through the South Door at approximately 3:03 p.m. He then went to the North side of the Capitol building and walked away from it. He then returned home that day

In its sentencing memo (pp. 5-8), the government writes about what others did that day. It talks of others who rioted, and others who committed violence, made threats, and had to be opposed with tear gas or rubber bullets. When it comes to Mr. Duong, however, the government cannot assert that he did any of those things – because he committed no violence, threatened no one, and engaged in no threatening behavior. As set forth in the plea agreement, he has accepted full responsibility for his limited conduct – entering a restricted area and the Capitol building without permission to do so.

The government also wastes much ink (Govt. Sentencing Mem. pp. 14-16) trying to portray Mr. Duong as some kind of dangerous revolutionary who is a danger to his community. The government's effort fails. Once again, the government talks about what *other* persons are alleged to have done, without ever proving that Mr. Duong ever did any of those things, or even that those events – *i.e.*, "conducting additional surveillance on the Capitol" or "creating destructive devices" (*id.* at 14) – ever actually took place in real life. Absurdly, the government spends three pages (14-16) talking about Molotov cocktails before having to unequivocally admit that "To law

enforcement's knowledge, Duong never completed construction of the prohibited destructive devices." *Id.* (Even here in its admission the government exaggerates, because there is no evidence Mr. Duong ever began construction of any such device.)  In fact, there is no evidence Mr. Duong ever even started the construction of a Molotov cocktail. That Mr. Duong has had not a single violation of his pretrial release conditions – for over three years – is the best indicator that he is neither a revolutionary or an individual with any ideology.

The Court should ignore the government's gossip and unproven innuendo and arrive at an appropriate sentence *for Mr. Duong's conduct on January 6*. The Court should arrive at the same conclusion reached by the Department of Probation after careful consideration – that Mr. Duong "is not an apparent flight risk or a danger to the community," and should be treated as such. *See* Dept. of Probation Sentencing Recommendation [ECF Doc. No. 58] at 2.

Contrary to the government's bald assertions, Mr. Duong is among the least culpable defendants being prosecuted for offenses committed on January 6. His offense – a brief, non-violent entry and walk through the Capitol building – has already resulted in significant hardship and over three years of home incarceration. An additional three years of probation with special conditions of mental health treatment and community service (see footnote 1 *supra*), as recommended by Probation, is sufficient additional punishment here. The fact that the incarceratory sentence urged by the government is inappropriate is demonstrated by the two cases – *Evans* and *Cortez* – the government mistakenly contends are "suitable comparisons" to Mr. Duong and where prison sentences were imposed. *See* Govt. Sentencing Mem. at 20-21.

The defendant in *Evans*, who was sentenced to three months in prison and three years of supervised release, acted violently on January 6, pushing against a police line, encouraging others to riot, and having to be pepper sprayed by the police. Evans also tried to delete video evidence of

his actions that day. *See* Govt. Sentencing Mem. at 20. Similarly, the defendant in *Cortez*, "breached the Parliamentary Door [of the Capitol]," "joined a pack or rioters facing off with police officers attempting to prevent rioters from further penetrating the building." *Id.* Cortez then "attempted to reenter the Capitol and also attempted to prevent Capitol police officers from securing the doors." *Id.* He then, armed with a flagpole, "verbally confronted" and "scream[ed] at" police officers and had to be pepper sprayed by the police. *Id.* at 20-21. For his violent acts, Cortez was sentenced to "four months' incarceration, three years of supervised release, 60 hours of community service, and $2,000 in restitution." *Id.* at 21.

Plainly, the violent, threatening behavior of defendants Evans and Cortez is far more active, serious and dangerous than anything Mr. Duong did on January 6.  Mr. Duong should not face the same type of sentence meted out to those who, unlike Mr. Duong, engaged in violence and threats that day, and who then engaged in obstructionist conduct.  Mr. Duong did none of those things.

**The guidelines' sentencing calculation**

Probation calculates the guidelines range based on a total offense level of 8, which includes a two-level decrease for acceptance of responsibility. PSR ¶¶ 34-44. Probation further ascribes a criminal history category of I, based on a criminal history score of one point. *Id.* ¶¶ 45-47.[4] Taken together, this results in an advisory guidelines range of 0 to 6 months. *Id.* ¶ 90. Probation's calculation accords with the calculation stated in the plea agreement. For the reasons herein, the Court should sentence Mr. Duong to the time he already has served under house arrest and impose

---

[4] The one point of criminal history stems from Mr. Duong mistakenly leaving a loaded gun on the top of his desk in his basement office, located in his home where his then two-month-old son was living, for which he received, and successfully completed, a 12-month suspended sentence. *See* PSR ¶ 46. Mr. Duong regrets his absent mindedness in having a gun in his home that was loaded and not under lock and key. He no longer owns or possesses any guns, and intends not to do so in the future as that is the best course of action and it is a condition of his plea agreement.

no additional prison time.

**Mr. Duong's Sincere Remorse, Rehabilitation, and Plans for the Future**

Fi is remorseful and will never violate the law again. No better proof of this exists than his actions since his arrest. ███████████████████████, admitted his actions, and timely pled to the Information.[5] Further, Mr. Duong has been under home incarceration with GPS location monitoring since July 2, 2021 – a period of 39 months, or over three years. PSR ¶ 13. He has been entirely complaint with his release conditions that entire time. *Id.* ¶¶ 13-15; Dept. of Probation Sentencing Recommendation [ECF Doc. No. 58] at 2 (same).

In its papers, the government entirely glosses over the punishment of that extended home confinement upon Fi, particularly given his pre-existing long-term depression. Home confinement involves material pervasive restrictions on one's freedom, and Mr. Jarin details the significant impact on Fi of his house arrest, Fi's sincere remorse for his actions, and Fi's rehabilitation:

> I am aware that he [Fi Duiong] is facing charges that took place on January 6th 2021. I have witnessed his mental state decline ever since. He has been in house arrest for quite a long time. He's already missed a lot in his life, even the simple enjoyment of taking his son to the park. He feels remorse and has reflected on what has happened. Knowing him, I believe he will never partake in anything like this again. I do ask whoever has the decision for his sentencing to please consider everything that he's gone through.

---

[5] The government complains that Mr. Duong drove and vaped (defense counsel did not notice any vaping, and the government and its 4 agents did not ask Mr. Duong to stop this purported vaping) during a portion of his plea interview with the government, before pulling over and stopping his car upon the government's request. *See* Govt. Sentencing Mem. at 3 n.4 and 17-18. Importantly however, the government is unable to identify any information not provided to the government by Mr. Duong; any questions he refused to answer; any misstatements by him during the interview; or any prejudice of any kind to the government. Plainly, Mr. Duong has fully cooperated with the government and law enforcement, just as he has remained fully compliant with the conditions of his release. Certainly, the minor and soon resolved technical difficulties experienced by the government during that interview does not support incarcerating Mr. Duong, as the government seems to imply. Indeed, such an invitation by the government would also be an invitation to commit plain error.

Ed Jarin Letter to Court (Ex. B) at 2.

Mr. Duong is committed to doing better for his wife, son, and family. He has not allowed

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████

Likewise, Fi has placed greater emphasis on his Christian faith. He now attends, and is an active member of, Vietnamese Gospel Baptist Church (an evangelical Baptist denomination) in Annandale, Virginia. In particular, Fi spends time assisting with the youth group at the church, helping youth minister Andrew Lam positively mentor and guide the younger members of the church. In her letter to the Court, Fi's mother provides the names and numbers of three members of the church who can attest to Fi's renewed commitment to his faith and spiritual growth, and inform the Court regarding Fi's deep involvement and volunteer work for the church -- pastor Francis Phan (703-981-8088), youth minister Andrew Lam (323-738-1292), and senior deacon board of director Linh Lam (703-864-5236).

For the last three years, Mr. Duong has (i) lived in house arrest; (ii) been entirely compliant with his release conditions; (iii) maintained steady employment; (iv) handled his mental condition despite the pressures he is under; and (v) lived a quiet law-abiding life with his family. While the government ignores these 39 months of law-abiding behavior in its sentencing memo, the Court should not. Rather, like the Department of Probation, the Court should recognize the self-evident truth conclusively demonstrated by these last 39 months – that Mr. Duong "is not … a danger to the community" Dept. of Probation Sentencing Recommendation [ECF Doc. No. 58] at 2.

Mr. Duong's plans for his future are simple. Supported by his family, Fi plans to continue his road of self-improvement. He plans to continue being there for his wife, son, and family; continue working at Autobahn Motor Speedway, continue volunteering at his church; and continue adhering to the mental health treatment plan. Above all, he will remain law-abiding. He is ashamed and deeply regrets the stress and harm his offense has caused his family, and he is determined to never break the law again.

While a prison sentence is not necessary to serve any sentencing purpose, there is no question that any time in prison will severely disrupt Mr. Duong's life and the lives of his family. Financially, he is the sole breadwinner in his immediate household. If he goes to prison for the four months urged by the government, however, Fi will end up losing his job at Autobahn, reducing his family's income by over 50%. *See* PSR ¶ 81 (monthly income analysis). Moreover, Fi very much likes the work that he does at Autobahn Indoor Speedway. He is good at it and works hard at it. Fi "is an exemplary employee who reports on-time and goes above and beyond." PSR ¶ 69 (statement from Autobahn to Probation).

Emotionally, while in prison, Fi will not be there to support his autistic and learning-disabled son, who depends on him. Nor will he be there for his mother, who is going through a divorce and depends on him as well.

Mentally, going to prison will interrupt ███████████████████████████ ███████████████████████████████████ No matter how short the time in prison, incarceration, ███████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████

None of these disruptions are necessary and none are required by any of the sentencing goals, all of which already have been met, or will be met, through a non-incarceratory sentence. Accordingly, the sentence being urged by the government – four months in prison, followed by three years of supervised release – would result in a greater than necessary sentence. Instead, the Court should impose the sentence of 36 months of probation, together with special conditions including mental health treatment and community service, recommended by the Department of Probation.[6]

**ARGUMENT**

I.       **THE LEGAL STANDARDS FOR SENTENCING**

The primary directive in § 3553(a) is that the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the factors set out in 18 U.S.C. § 3553(a)(2)," *i.e.*, "proportionality, deterrence, incapacitation, and rehabilitation." 18 U.S.C. § 3553(emphasis added)*; accord Pepper v. United States*, 562 U.S. 476, 493 (2011); *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017). In addition, the sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of guidance as a youth. 18 U.S.C. § 3661.

While the sentencing guidelines comprise one factor for this Court to consider, they are only one such factor, and "truly are advisory.'" *United States v. Douglas,* 713 F.3d 694, 700 (2d

---

[6] The $2,000 in restitution is provided for in the plea agreement and is undisputed.

Cir. 2013) (quoting *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc)). This Court "may not presume that the Guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007); *Nelson v. United States*, 555 U.S. 350, 352 (2009). Here, an individualized assessment of the record facts, the § 3553(a) factors, and application of the overarching parsimony clause, support the requested sentence of time already served under house arrest, followed by three years of probation under special conditions.

**II.      THE § 3553(A) SENTENCING FACTORS STRONGLY SUPPORT THE PROBATIONARY SENTENCE RECOMMENDED BY THE DEPARTMENT OF PROBATION**

The advisory guidelines range in this case is from zero to six months in prison. *See* PSR ¶ 90. The remaining § 3553(a) sentencing factors all strongly support the non-incarceratory sentence recommended by Probation.

The sentencing goals of specific deterrence and rehabilitation support the requested probationary sentence. As to them, Mr. Fi's timely plea and acceptance of responsibility for his actions, his appropriate behavior in the three years and three months since his release, and his positive future plans, all demonstrate his sincere commitment to changing his ways.

Fi deeply regrets his prior actions on January 6. Most deeply, he regrets the impact and harm his actions, and the last three years of house arrest, have had on his family. He is determined to never cause them any such harm or shame again. To that end, he has worked hard to become a better person, including by embracing sobriety and spending his time positively in church, at work, and caring for his six-year-old boy, Dante, and his special needs.

While the government contends time in prison is needed to punish, specifically deter, and rehabilitate Mr. Duong, the government is mistaken. The operative facts conclusively demonstrate Mr. Duong's commitment to changing his ways, and that prison time, in addition to his prosecution

and the last 39 months of house arrest, is not needed to deter or rehabilitate him.

Moreover, Congress has recognized that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Plainly, correction and rehabilitation are not best addressed here by incarceration, but by placing Fi under three years of probation, while allowing him to continue successfully integrating into society in a positive manner. In this regard, his term of Probation includes recommended special conditions, such as mental health treatment and medication and 50 hours of community service, designed to help ensure his successful reintegration.

Likewise, the sentencing goal of general deterrence is also met here, as the requested sentence is sufficient to generally deter others who are considering making the same mistake as Mr. Duong. Studies have shown that it is the arrest that best deters, not the length of the sentence. *See, e.g.*, Valerie Wright, *The Sentencing Project, Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, 5-6 (2010), available at http://www.antoniocasella.eu/nume/Wright_2010.pdf.[7] Mr. Duong's family, neighbors, and associates already have seen him arrested and subjected to three plus years of house arrest ad prosecution. Under these circumstances, sending Fi to prison will not provide any greater general deterrence.

Finally, as discussed above, the sentence recommended by Probation accords with the sentences imposed upon similarly situated defendants. Indeed, of the 79 defendants from 2018-

---

[7] *See also* Brian Jacobs, "*The Cost of Affording Deterrence*," Forbes (Nov. 16, 2021) (to achieve the aim of general deterrence, "social science conclusively finds that certainty matters more than severity"), available at https://www.forbes.com/sites/insider/2021/11/16/the-cost-of-affordingdeterrence/?sh=6f8975277bd4; U.S. Department of Justice, *Five Things About Deterrence*, National Institute of Justice (May 2016) ("Research shows clearly that the chance of being caught is a vastly more effective deterrent than even draconian punishment."), available at https://www.ojp.gov/pdffiles1/nij/247350.pdf.

2022 like Mr. Duong, whose primary guideline was §2A2.4 with a Final Offense Level of 8 and a Criminal History Category of I, the median sentence imposed was 0 months. *See* PSR ¶ 114.

 For all these reasons, the requested probationary sentence is sufficient, but not greater than necessary, to meet the sentencing goals and fully accords with the parsimony principle underlying federal sentencing.

<u>**CONCLUSION**</u>

 An individualized assessment of the § 3553(a) factors in this case (and the parsimony principle) strongly support the non-incarceratory sentence of 36 months of probation, together with special conditions ███████████████████ and community service, recommended by the Department of Probation. Accordingly, Mr. Fi Duong respectfully requests that the Court impose that sentence upon him.

      Respectfully submitted,

      /s/ Sabrina P. Shroff
      Counsel to Mr. Fi Duong

      & Office of the Federal Public Defender
      District of Columbia

September 23, 2024